A. J. Ballentine, Executor, etc., *v.* Isabella Spear *et al.*

## A. J. BALLENTINE, Executor, etc., *v.* ISABELLA SPEAR *et al.*

1. **WILLS.** *Construction of.* *An estate in remainder can not be charged.* *When.* A party who holds a life estate can not charge the estate in remainder unless he be possessed of the absolute power of disposition.

   Cases cited: Smith *v.* Bell, M. & Y., 302; Pillow *v.* Ray and Wife, 1 Swan, 185; Silver *v* Brown, 2 Swan, 116; Williams *v.* Johnson, 2 Swan, 624; Dean *v.* Myers, *et al.*, 1 Cold., 228.

2. **SAME.** *Same.* *Personal property.* The interest of remaindermen in personal property, which is consumed by use, is limited to such as is left at the death of the tenant for life.

   Cases cited: Forsey *v.* Luton, 2 Head, 184; Vancil *v.* Evans, 4 Cold., 340.

3. **SAME.** *Same.* *Permanent improvements.* Permanent improvements, such as necessary repairs, etc., will be charged to the tenant for life, when made during the life estate.

---

### FROM GILES.

---

Appeal from the Chancery Court. JNO. C. WALKER, Chancellor.

T. M. JONES & SONS for Ballentine.

BROWN & McCOLLUM for Isabella Spear.

JOHN A. TINNON for Minor Defendants.

McFARLAND, J., delivered the opinion of the Court.

This bill was filed to obtain a construction of the

will of George Spear, who died about September, 1858.

After providing for the payment of debts, the will is as follows: "In the second place, I give and devise to my beloved mother, Isabella Spear, for and during her natural life, all the residue of my property, of every kind and description, both real and personal, consisting of the house and lot where I now live, in or near Pulaski, in said county, adjoining the land or lots of F. H. Wilkerson, James Fulsom and others; my negro woman, Harriet, and her two children, Charlie and Hunter; household and kitchen furniture, and my notes, accounts and demands, to have and to hold and to use. the same for her comfortable support during her natural life, and for the comfortable support of my beloved sister, Isabella, while she remains single and with my mother. And in the third place, at the death of my mother, whose life may a kind Providence prolong and protect, I wish, desire and direct my executor to sell and dispose of all of said property, both real and personal, which may remain, at private or public sale, as may be best, and collect and divide the whole of the proceeds thereof into three equal shares. One share to my beloved sister Isabella, now living with me and my mother; one share to the children of my deceased sister, Margaret, wife of Thomas S. Riddle, and one share to the children of my deceased sister, Mary Ann, wife. of Syrenius D. Tinnon, absolutely and for ever."

A. J. Ballentine, Executor, etc., *v.* Isabella Spear *et al.*

This is all, except the appointment of an executor.

The mother of the testator remained in possession of the estate, with the sister Isabella, who lived with her, until the death of the former, in June, 1868.

The executor thereupon sold the house and lot specified in the will, and some vacant lots, and the small amount of personalty that remained, this being the whole of the estate.

The house and lot was purchased by Isabella Spear for $2,600; the unimproved lots sold for $300. The remaining personalty sold for about $100.

The bill shows that Isabella Spear sets up a claim as an off-set against her notes for the purchase of the house and lot.

The substance of the claim is, that the estate left by the will, that is, a life estate in the property, was insufficient for the support of herself and mother, after the payment of the debts, and said Isabella was compelled to expend, for the support of herself and mother, a considerable sum, the proceeds of her own industry; and also that she paid out a sum for repairs, in permanent improvements upon the premises, all of which she claims should be allowed her, and deducted from the notes for the house and lot.

The Chancellor was of opinion that the leading object of the will was to provide a support for the mother and sister of testator, and the life estate proving insufficient for this purpose, the entire body of the estate was chargeable with this support, and the daughter, Isabella, having been compelled, from her

own means, to make up the deficit, and pay what the life estate in the testator's property lacked of furnishing the support, that she was entitled to be repaid the sums thus advanced by her.

An account was ordered, from which it was ascertained that said Isabella had expended $184.95, for permanent improvements or repairs, and that for the support of herself and mother she had expended, with interest, $2,138.57, the two sums making $2,325.52. For this 'sum she was allowed a credit upon the aforesaid notes.

From this decree the parties representing the children of the two deceased sisters, who are entitled to a share each of the remainder, have appealed.

The claim of Miss Isabella is presented with much earnestness. It may possess much merit, in a general way, but we have not been able to find any ground upon which the Chancellor's decree can stand, consistent with sound legal principles.

It is certainly true, that in the construction of wills, the intention of the testator is to prevail; but that intention must be gathered from the language used. That the testator's mother was only to take a life estate in the property, is as clearly expressed as the language can express it. It is true, the will further says, she is "to have and to hold and to use the same for her comfortable support during her natural life, and for the comfortable support of my beloved sister, Isabella, while she shall remain single and with my mother." But this surely can not

change the positive limitation to a life estate in the first instance, and the devise of the remainder over. It is but an expression of the purpose for which the devise was made, the amount devised being, in the opinion of the testator, sufficient for the comfortable support of the mother and sister.

It is well settled that where a devise or bequest of a life estate, with remainder over, is followed by an absolute power of disposition in the first taker, that such power of disposition being inconsistent with the devise over, that the first taker will take the absolute estate. *Smith* v. *Bell,* Martin & Y., 302; 1 Swan, 185; 2 Swan, 116, 624; 1 Cold., 228.

But nothing short of an absolute power of disposition will defeat or change the devise of the remainder over.

This will contains no power of distribution. The language is, "to have and to hold and to use the same for her support," etc., and if it did, the result would be to give the estate absolutely to the mother, and Isabella's claim would be against her estate; but we hold that the mother took only a life estate.

As to the personalty that would be consumed by the use, the interest of the remainder-men would be limited to that which was left at the death of the tenant for life. See *Forsey* v. *Luton,* 2 Head, 184; *Vancil* v. *Evans,* 4 Cold., 340.

The estate of the testator's mother being clearly limited to a life estate, she could not, nor could the

daughter charge this property beyond the termination of her life.

The substance of the argument for Isabella is, that the provisions of the will having been intended for the support of her mother and herself, and proving insufficient for that purpose, she was compelled, in part, to support herself and mother also, and therefore she can charge her brother's estate, not only with the amount paid for her mother's support, but for the amount expended for her own support; that her brother having undertaken by his will to support her, ought to have done so.

We do not assent to the correctness of this view.

As to the amount claimed for permanent improvements, this seems to have been for necessary repairs, such as a roof and fencing. This, as a general rule, is chargeable to the tenant for life, when made during the life estate.

The decree must be reversed, and the above mentioned credits upon the sale notes disallowed. The costs will be paid out of the funds.